# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NANCY TENHET, | ) 1:08cv0870 DLB |
| | ) |
| | ) ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) SOCIAL SECURITY COMPLAINT |
| | ) |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

## BACKGROUND

Plaintiff Nancy Tenhet ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability and disability insurance benefits Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.[1]

## FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed her initial application in June 2004, alleging disability since May 21, 2004, due to Lyme disease, pain, memory loss, fibromyalgia, diabetes, nausea, numbness in her fingers,

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. On July 18, 2008, the action was reassigned to the Honorable Dennis L. Beck for all purposes.

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1

a limp, loss of vision, and sensitivity to bright light and noise. AR 76-79, 118-125. After being denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 42-46, 49-53, 57. On October 17, 2006, ALJ James Berry held a hearing. AR 523-574. ALJ Berry denied benefits on December 11, 2006. AR 324-334. The Appeals Council granted Plaintiff's request for review on June 4, 2007, and the ALJ's decision was vacated and the action was remanded. AR 338-341.

ALJ Bert C. Hoffman held a second hearing on October 2, 2007. AR 523-574. Plaintiff amended her claim to seek a closed period of disability from May 21, 2004, through February 1, 2007, the date she returned to work. AR 16, 531. ALJ Hoffman issued an order denying benefits on November 26, 2007. AR 13-22. On April 21, 2008, the Appeals Council denied review. AR 8-11.

Hearing Testimony

ALJ Hoffman held a hearing on October 2, 2007, in Fresno, California. Plaintiff appeared with her attorney, Melissa Proudian. AR 523.

Plaintiff testified that she was 59 years old at the time of the hearing. She was not married. Plaintiff weighed 170 pounds and was 5 feet, 4 inches tall. AR 526. She has a driver's license and drives to her current job, which is five miles away, three days a week. She also drives to the grocery store. AR 527. There was a period, however, beginning in May 2004 and lasting through February 2007, when she was not driving because of the "brain fog" caused by her illness. AR 528.

Plaintiff completed the ninth grade and then received her GED. She also had a "couple" of college units. AR 528. She began working again in February 2007, performing telephone marketing. She works 15 hours a week and has special accommodations that allow her to delay her workday if she wakes feeling unwell. She can also work at home if she needs to. AR 529-530. Her workdays are not regular and she's not sure if she'll be able to continue. AR 531.

Plaintiff testified that during the closed period (May 21, 2004, through February 1, 2007), she could not work because she was sick everyday and had constant joint pain, muscle pain and memory problems. AR 539. She also has Lyme disease, fibromyalgia and is pre-

diabetic. She has numbness in her hands when she wakes in the morning and has problems with her knees and muscles. When she gets overstressed, her vision becomes blurry. AR 540. She is also sensitive to very bright lights and has difficulty sitting in front of a computer for a "very, very long time." AR 540. She has concentration problems all the time and is "totally depressed." AR 541.

During the closed period, the pain was mostly in her feet, knees, legs, arms and neck. It affects her whole body, though, and can be worse in one area. She began experiencing "horrific brain fog" and pain in May 2004 and had to stop working. AR 542. She was on pain medication and a medication for nerve pain during the closed period. AR 543. The pain medication helped but did not take away the pain completely. It also made her drowsy and she had to lay down for an hour or so everyday, sometimes twice. AR 544-545.

She was diagnosed with Lyme disease in 1998 and by 2004, she was being treated for post Lyme disease syndrome, fibromyalgia, and joint pain. AR 547. Her tests for Epstein Barr virus have been positive since the early 1990s to the present. AR 548. She received chiropractic treatment but her symptoms have never gone away. She also had weakness in her knees. AR 568. During the closed period, she believed that she could sit for probably an hour before needing to get up and move around. AR 550. She thought she could stand for about 30 minutes and walk about 15 minutes. She thought she could lift less than 10 pounds. AR 551. She also could not use her arms on a continual basis, and thought her limit was about 30 minutes. AR 552.

Plaintiff's depression also affected her daily during the closed period. She had crying outbursts daily and did not want to be around people. The "brain fog" affected her ability to concentrate daily, and she could concentrate two to three hours a day, at most, for two hours at one time. AR 554-557. Her depression, for which she took medication, also affected her ability to concentrate. AR 558-559.

When questioned by her attorney, Plaintiff explained that she was not sleeping well but was able to shop and cook by herself. She could not clean because of fatigue. AR 560. She

watched television for two to three hours, visited family and friends, and went out to lunch twice a month. AR 563.

Plaintiff explained that she went back to work when she first felt capable of working, in February 2007. AR 569, 571. She interviewed for the position in January 2007 and prepared prior to her first day. AR 572.

Medical Record

In February 2003, Plaintiff saw FNP Fontana and complained of feeling tired and aching muscles. She was diagnosed with chronic fatigue. AR 289.

In March 2003, Leonard Grabowski, M.D., noted that Plaintiff appeared to have signs and symptoms of fibromyalgia with no signs of acute inflammatory arthritis. He recommended a very conservative approach to treatment and hoped that Lexapro would help her cope with the symptoms. AR 162.

In October 2003, Plaintiff complained of increased fatigue and right ear pain. She was diagnosed with Lyme disease, right ear pain and Herpes I. AR 269. On October 28, 2003, FNP Fontana noted that she could go back to work. AR 269.

On January 27, 2004, Plaintiff was referred to Mary-Louise Scully, M.D., for an infectious disease consultation. Plaintiff complained of significant fibromyalgia and fatigue, as well as joint pain and ringing in her ear. Her physical examination was normal, although she was obese. Dr. Scully believed her symptoms were related to fibromyalgia and fatigue, along with a new diagnosis of Lyme disease. She was instructed to work on her diet and exercise because of her potential to develop diabetes. AR 152-154.

Plaintiff was referred to Charles J. Curatalo, M.D., on April 29, 2004, for evaluation of neurological symptoms. On examination, she appeared mentally sharp and fluent. Her overall neurological examination was benign. He diagnosed prior treatment for Lyme disease, neurological and medical symptoms (unlikely secondary to Lyme disease), possible obstructive sleep apnea and chronic fatigue syndrome. AR 146-148.

In May 2004, Plaintiff complained of pain in her ears, problems at work, low energy and interest and trouble concentrating. She also complained of numbness in her hands. Plaintiff was diagnosed with Lyme disease, tinnitus and depression. AR 255.

On May 20, 2004, Plaintiff saw Craig Calloway, M.D., for evaluation of tinnitus and sinus congestion. Her physical examination, including an examination of her ears and hearing, was essentially normal. Dr. Calloway diagnosed subjective tinnitus and abnormal auditory perception. He recommended that Plaintiff have an MRI of her head. AR 256-258.

On May 24, 2004, FNP Fontana noted that Plaintiff would be off work until June 24, 2004. AR 255.

A June 2004 vision examination indicated that her vision was correctable to 20/20. AR 167.

Plaintiff saw FNP Fonatana in June 2004 and complained of panic attacks, difficulty with her memory and light sensitivity. She also complained of being achy. Plaintiff was sent for an evaluation of her Lyme disease. AR 254.

On July 15, 2004, Plaintiff was evaluation for Lyme disease by Steven Harris, M.D. She reported being ill for the past 13 years and has been declining since April 2004. On examination, Plaintiff had eight tender trigger points over her back, chest and knees, slight inflammation and tenderness in her left knee and crepitus in both knees. Her gait was normal and sensations were intact. Dr. Harris assessed Plaintiff with Lyme disease and a history of untreated Epstein-Barr virus. He started her on medications and ordered more testing. AR 190-191.

In August 2004, Plaintiff saw FNP Fontana and complained of an achy body, ringing in her left ear, pain in her right ear, and headaches. Additional labs were ordered. AR 247.

On September 28, 2004, Plaintiff complained of ringing in her ears, irritability, "brain fog," headaches and pain in her knees. Her examination was essentially normal and she was diagnosed with Lyme disease, fatigue and allergies. AR 244.

On December 4, 2004, Plaintiff saw Sarupinder Bhangoo, M.D., for a consultive physical examination. She complained of chronic joint and muscle pain since 1998 due to Lyme disease and chronic fatigue syndrome since May 2004. Plaintiff reported that she is able to care for

5

herself, do all household work, drive, walk two to four blocks daily and grocery shop. Plaintiff's physical examination was unremarkable and lacked hallmarks of Lyme disease. Despite Plaintiff's history, she was very functional and her only physical limitation would be her complaints of pain. Based on this, Dr. Bhangoo believed that Plaintiff could stand and walk for eight hours in an eight hour day and sit for eight hours in an eight hour day. She could lift and carry 100 pounds occasionally and 50 pounds frequently. Although Plaintiff reported that her vision was extremely poor and light from oncoming cars hurts her eyes, Dr. Bhangoo noted that she continues to drive and shop, etc., and could therefore perform heavy work.[3]  AR 174-178.

On December 8, 2004, Plaintiff underwent a psychiatric evaluation performed by Michael S. Barnett, M.D. Plaintiff reported that she could care for herself, cook, clean and shop, but that the Lyme disease symptoms make her depressed. Her mental status examination was normal. Dr. Barnett diagnosed depressive disorder, not otherwise specified.

Dr. Barnett explained that it was difficult to separate out Plaintiff's psychiatric problems from her physical problems, so he diagnosed her with depressive disorder. She reported a variable response to Lexapro, although her mental status examination was "quite good and the depressive symptoms are quite mild." Plaintiff could understand and remember simple or complex work-related instructions and tasks. However, her depressive symptoms, including poor sleep, low energy and poor concentration, would make it difficult for her to do work-related tasks in an eight-hour work situation. She would have difficulty sustaining focus and concentration long enough to complete routine tasks in a timely and appropriate way and may need additional supervision. Her variable tolerance of being around others would make it difficult for her to interact independently, appropriately and effectively with co-workers, supervisors and the public. She would also have great difficulty adapting to changes, hazards or stressors in the work environment and stress could exacerbate her symptoms dramatically. Dr. Barnett described her prognosis as poor because her physical problems appear to be chronic and will continue to exacerbate her mood symptoms. AR 182-184.

---

[3] In a December 6, 2004, letter, Plaintiff informed the Commissioner that she believed Dr. Bhangoo knew little about Lyme disease and treated her improperly during her consultive examination. AR 180-181.

On January 21, 2005, State Agency physician Brian Ginsburg, M.D., completed a Physical Residual Functional Capacity Assessment. He believed that Plaintiff could occasionally lift 50 pounds, 25 pounds frequently, stand and/or walk for about six hours and sit for about six hours. Plaintiff had no further limitations. AR 197-204. This opinion was affirmed in July 2005. AR 204.

On January 28, 2005, State Agency physician Archimedes Garcia, M.D., completed a Psychiatric Review Technique Form. He opined that Plaintiff had mild restrictions in activities of daily living, maintaining social functioning and maintaining concentration, persistence or pace. In a Mental Residual Functional Capacity Assessment, he opined that Plaintiff was moderately limited in her ability to understand, remember and carry out detailed instructions. She could, however, perform simple, repetitive tasks, sustain concentration, persistence and pace in two hour increments, get along with co-workers and supervisors and adapt to normal changes in the workplace. AR 205-221.

In January, February and March 2005, Plaintiff complained of tinnitus, headaches, vomiting, increased fatigue, aching in her hands and elbows, rashes, anxiety and vision changes. Her medications were adjusted and further tests were ordered. AR 227, 233, 235.

Plaintiff sought emergency room treatment for headaches and vomiting on August 7, 2005. The directed workup was negative and she was discharged with a diagnosis of myalgia. AR 304-310.

In January 2006, Plaintiff sought treatment for a tried, achy body and reported that she was under stress at her volunteer job. AR 323.

In March 2006, Plaintiff reported numbness and aching pain in her joints. She also reported that she was having trouble holding objects. Lab work was ordered and she was instructed to follow up with a Lyme disease specialist. AR 323.

On April 20, 2006, Jatinder Chopra, M.D., completed a Medical Assessment of Ability to Do Work-Related Activities. He opined that Plaintiff could lift five pounds occasionally, stand and/or walk a total of four hours, two without interruption, and sit for a total of four hours, two without interruption. Her reaching and pushing/pulling were also affected, as was her ability to

withstand extreme temperatures, chemicals, fumes, dust and humidity. Most of these limitations were based on Plaintiff's fibromyalgia. AR 223-225.

In an undated letter, Dr. Chopra indicated that since a tick bite in June 1998, Plaintiff has been diagnosed with Epstein-Barr virus and chronic fibromyalgia. He opined that Plaintiff was unable to work due to her Lyme disease, constant nausea and generalized body aches. AR 226.

On May 23, 2006, Plaintiff began treatment with Dora Ancaya-Lujan M.D. Her physical examination was normal. Dr. Ancaya-Lujan diagnosed a history of Lyme disease, post treatment, depression, hypothyroidism, fibromyalgia, chronic fatigue and peripheral neuropathy. She ordered additional tests and recommended that Plaintiff be sent to behavioral health for evaluation. AR 319-320.

On July 13, 2006, Plaintiff complained of back pain for the past two days after picking up her grandchild. She was diagnosed with a lumbar strain and instructed on exercise and stretches and told to use warm heat. AR 465.

In December 2006, Plaintiff began complaining of pain in her left foot. AR 464.

On January 22, 2007, Plaintiff saw Kourtney Hart, PA-C, in follow up for pain in her left heel. An x-ray revealed a small Achilles tendon spur. Plaintiff was referred to podiatry and instructed to continue wearing her heel pads. Plaintiff reported that she was going back to work part time on February 5, 2007, but that she can work from her home office and a lot of walking is not necessary. AR 459.

### ALJ's Findings

The ALJ determined that Plaintiff had the severe impairments of a history of Lyme disease and fibromyalgia. Despite these impairments, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform the full range of sedentary work. Therefore, Plaintiff could perform her past relevant work as a credit agency employee, which, based on the testimony of the vocational expert ("VE") at the first hearing, is generally performed at the sedentary level. AR 18-22.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," Richardson v. Perales, 402 U.S. 389, 402 (1971), but less than a preponderance. Sorenson v. Weinberger, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See* Sanchez v. Sec'y of Health and Human Serv., 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20

C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).[4] Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of her disability; (2) has an impairment or a combination of impairments that is considered "severe" (a history of Lyme disease and fibromyalgia) based on the requirements in the Regulations (20 CFR §§ 416.920(b)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; but (4) can perform her past relevant work as a credit agency employee. AR 18-22.

Here, Plaintiff argues that (1) the ALJ's findings establish disability; and (2) the ALJ erred in finding her not credible.

## DISCUSSION

A.    Disability Determination

Plaintiff first argues that, even assuming that the ALJ correctly evaluated the record, disability is established. Specifically, she believes that the ALJ limited her to sedentary work and, given her age at the alleged onset date, the grids direct a finding of disabled.

The ALJ determined that Plaintiff had the RFC to perform the full range of sedentary work. AR 20. Based on the testimony of the VE at the prior hearing, Plaintiff's past position as a credit agency clerk is skilled work generally performed at the sedentary level. The ALJ therefore concluded that Plaintiff could perform her past relevant work and was not disabled. AR 22.

Plaintiff's argument is based on her belief that the ALJ mistakenly failed to include his findings that Plaintiff had mild mental limitations in the RFC. Had he done so, he would have adopted the prior VE's testimony that she could not perform her past work. Given her age and RFC, this would have resulted in a finding of disabled under Medical Vocational Guidelines Rule 201.04.

Plaintiff's interpretation of the ALJ's findings is incorrect. As explained above, the ALJ conducts a five-step sequential inquiry in determining whether a claimant is disabled. *Smolen v.*

---

[4] All references are to the 2002 version of the Code of Federal Regulations unless otherwise noted.

*Chater*, 80 F.3d 1273, 1289 (9th Cir. 1996). At step two, the ALJ determined that Plaintiff had the severe impairments of a history of Lyme disease and fibromyalgia. At step three, he determined that these impairments were not "severe" enough to meet or medically equal any of the listed impairments. AR 15.

In making the step two and three findings, the ALJ followed 20 C.F.R. § 404.1520a(c), which sets forth the method used to rate the degree of functional limitation related to mental impairments:

> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listing of Impairments.
>
> (4) When we rate the degree of limitation in the first three functional areas (activities of daily living; social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

20 C.F.R. § 404.1520a(c)(3)-(4).

After the ALJ rates the degree of functional limitations resulting from a claimant's impairments, the ALJ determines the severity of those mental impairments. 20 C.F.R. § 404.1520a(d). If a mental impairment is found to be severe, the ALJ will determine whether it meets, or is equivalent in severity to, a listed mental disorder. 20 C.F.R. § 404.1520(d)(2). If the ALJ determines that the claimant has a severe mental impairment that neither meets nor is equivalent in severity to any listing, the ALJ then moves on to determine the claimant's RFC. 20 C.F.R. 404.1520a(d)(3).

Here, the ALJ analyzed the degree of Plaintiff's functional limitations in activities of daily living, maintaining social functioning, maintaining concentration, persistence or pace, and episodes of decompensation as part of his step two and three findings. Having determined that Plaintiff's physical limitations were severe but her mental impairments were not, the ALJ determined Plaintiff's RFC. Unlike the analysis at steps two and three, where the ALJ examines

the degree of limitation, RFC is the most a claimant can do, "*despite* [her] limitations." 20 C.F.R. § 404.1545(a) (emphasis added).

Plaintiff's argument, therefore, tries to impose a step two finding on the RFC determination. *See eg. Hoopai v. Astrue,* 499 F.3d 1071, 1074 (9th Cir. 2007) (the "step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five."). Her argument is without merit and must be denied.

B.  Plaintiff's Credibility

Finally, Plaintiff argues that the ALJ rejected her subjective testimony without providing clear and convincing reasons.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Cequerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991). "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment," *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted). In rejecting the complainant's testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) (quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)).

Pursuant to Ninth Circuit law, if the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002). "The ALJ may consider at least the following factors when weighing the claimant's credibility: '[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Id.* (citing *Light v. Soc. Sec. Admin.,* 119 F.3d 789,

792 (9th Cir. 1997). "If the ALJ's credibility finding is supported by substantial evidence in the record, we may not engage in second-guessing." *Id.*

Here, the ALJ explained that Plaintiff's statements to the consultive examiners about her daily activities contradicted her own testimony, as well as the testimony of the lay witnesses. For example, although Plaintiff testified that she could not work during the closed period because she was sick everyday, had constant joint pain, muscle pain, memory problems, and "horrific brain fog," she told Dr. Bhangoo in December 2004 that she was able to care for herself, do all household work, drive, walk two to four blocks daily and grocery shop. AR 21, 174-178. Dr. Bhangoo described Plaintiff as "pretty much leading a normal life" and being "very functional" despite her unusual history of Lyme disease and chronic fatigue with no supporting clinical findings. AR 177. Similarly, she told Dr. Barnett in December 2004, that she could care for herself, cook, clean, shop and visit with people daily. AR 21, 182-184.

The ALJ is entitled to examine Plaintiff's daily activities, *Thomas*, 278 F.3d at 958, and given the stark contrast between her reports to physicians and her testimony as to the severity of her condition, the ALJ made a reasonable conclusion. The courts do not have the responsibility for weighing the evidence and resolving conflicts therein, that responsibility belongs to the Commissioner alone. *Richardson v. Perales*, 402 U.S. 389, 399 (1971). The Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). Plaintiff is correct that disability claimants should not be penalized for attempting to lead normal lives, *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996), but again, the stark differences between Plaintiff's description of her symptoms and what she is able to do supports the ALJ's interpretation.

The ALJ also noted that Plaintiff testified that she continues to have the same symptoms and limitations currently even though she began working again, suggesting that she could work during the closed period. AR 21. Indeed, Plaintiff testified that she was disabled in part by "brain fog," but that she continues to have "some brain fog everyday." AR 555. She also testified that after she returned to work in February 2007, she felt a lot of stress every day and could concentrate for two hours at a time. AR 557-558. Her hands were numb when she awoke

13

both during the closed period and after she began working again. AR 566-567. The ALJ is entitled to draw inferences logically flowing from the evidence. *See Sample v. Schweiker,* 694 F.2d 639, 642 (9th Cir. 1982).

Plaintiff challenges this finding, arguing that even though she worked 15 hours a week, she sometimes had to leave work early and could not complete her workday. Yet Plaintiff testified that she works 15 hours a week and has accommodations that allow her to work these 15 hours whenever she is able to. AR 529. Although she also testified that she was unsure how long she could continue, it does not negate the fact that she was able to work in some capacity.

Insofar as Plaintiff suggests that her testimony supports a finding that her condition waxes and wanes, she testified that her position was amenable to this. Plaintiff also points to a statement on a January 2008 fax from Plaintiff's attorney that "Claimant now reports that she has lost her job due to her job performance." AR 495. The Court recognizes that failed work attempts do not necessarily weigh against a claimant's testimony. *Lingenfelter v. Astrue,* 504 F.3d 1028 (9th Cir. 2007). However, notwithstanding the fact that Plaintiff was able to work for almost one year and that losing the position due to her "job performance" does not necessarily mean that she was unable to perform her job because of a disability, this evidence was not before the ALJ and was not relevant to the closed period.

In other portions of the his opinion, the ALJ also properly noted the numerous discrepancies between Plaintiff's severe description of her symptoms and the lack of clinical findings. AR 19. *Morgan v. Comm'r,* 169 F.3d 595, 600 (9th Cir. 1999).

Finally, Plaintiff points to her excellent work history in suggesting that the ALJ's credibility determination was flawed. While a good work history weighs in favor of a claimant's credibility, it is only one factor and the ALJ is entitled to weigh *all* factors before him. In this case, the weight of the evidence supports the ALJ's conclusion that Plaintiff was not credible and allows the Court to determine that the ALJ did not arbitrarily reject her testimony.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff, Nancy Tenhet.

IT IS SO ORDERED.

Dated: **March 23, 2009**          **/s/ Dennis L. Beck**
UNITED STATES MAGISTRATE JUDGE